Larry L. MOODY, Plaintiff
and Respondent,

v.

Kristen Fonnesbeck MOODY,
Defendant and Appellant.

No. 19922.

Supreme Court of Utah.

Dec. 6, 1985.

Rehearing Denied March 5, 1986.

Daniel L. Berman, Ross C. Anderson, Cole R. Capener, Salt Lake City, for defendant and appellant.

David S. Dolwitz, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Kristen Fonnesbeck Moody, defendant, appeals an order of the district court modifying a divorce decree to award custody of the parties' two minor children to their father, plaintiff Larry L. Moody. We affirm.

Under a divorce decree dated September 1981, and by stipulation of the parties, the parties were granted joint custody of their son, then age 5, and their daughter, age 2. Under the terms of the stipulation and the

divorce decree, the children were to live with defendant for nine months of the year and with plaintiff the remaining three months of the year, with each party having reasonable rights of visitation during the time the children were living with the other.

From the time of the divorce until about May 1983, however, the children lived continuously with defendant, and plaintiff visited them two days per week on his days off work. In February 1983, plaintiff remarried. In May 1983, the children went to live with plaintiff and his wife.

In June 1983, without defendant's knowledge or consent, plaintiff took the children to Dr. Liebroder, a psychologist, for evaluation. Dr. Liebroder's report prompted plaintiff to petition the district court to transfer custody to him, alleging that there had been a substantial change in the circumstances on which the previous custody award was based. In an affidavit supporting his petition, plaintiff stated, among other things, that since the time of the divorce, defendant had become increasingly emotionally unstable and was unable to properly care for the children, and that plaintiff had remarried and could provide a stable home for the children. By stipulation of the parties, the court ordered that custody evaluations be performed on the parties and the children.

In November 1983, defendant petitioned the court to award custody to her. In an affidavit supporting her petition, she stated that there had been several substantial changes of circumstance since the divorce, including the facts that plaintiff had changed jobs and now had only weekends off work, that "the constant changing of the children has resulted in a circumstance which is not in their best interests," and that "the parties have encountered difficulties from time to time in managing the children's time jointly."

At trial in February 1984, based on the parties' pleadings and affidavits and the custody evaluation reports, the court found

that there had been a "prima facie" showing of a change in circumstances sufficient to warrant reopening the custody issue. Trial proceeded on the issue of which custody arrangement was in the best interests of the children. In response to defendant's objection, the court excluded from evidence the testimony of Dr. Liebroder. The written reports of Drs. Elizabeth Stewart and Kim Peterson, the psychologist and social worker who had performed the court-ordered custody evaluations, were received in evidence. Attached to Dr. Peterson's report was the report of Dr. Liebroder. Both Dr. Stewart and Dr. Peterson testified that both parties were fit and proper persons to be awarded custody of the children, but recommended that custody be awarded to plaintiff, based on his more effective parenting style.

The court found that "communications between the parties are difficult and strained and that difficulty in communication has caused problems for the children," that "[e]ach of the parties realized that the joint custody established in the Decree was not working," and that "joint custody with the constant transfer of the children from one home to the other had an adverse impact on the children." Accordingly, the court ordered that joint custody be terminated and awarded custody to plaintiff.

Defendant contends that the evidence does not support the trial court's finding of a substantial change in circumstances and that the court erroneously considered evidence on the custody issue before having found such a change in circumstances.

■ In *Hogge v. Hogge*,[1] this Court adopted a bifurcated procedure for determining whether to modify a custody award. The first step of the *Hogge* procedure requires a determination of whether there has been a change in the circumstances on which the previous custody award was based that is sufficiently substantial and material to justify reopening the custody question.[2] Only if such a change is found

---

1. Utah, 649 P.2d 51 (1982).

2. *Id.* at 54.

may the court proceed to the second step of the *Hogge* procedure, a consideration of which custody arrangement will serve the best interests of the child.[3] During the initial step, the court may receive evidence only as to the nature and materiality of any changes in the circumstances on which the previous award was based.[4]

■ Contrary to defendant's contention, the pleadings and supporting affidavits in this case sustain the trial court's finding of a substantial change in circumstances in accordance with *Hogge*. First, in their respective petitions to modify the joint custody award, each party alleged that there had been a substantial change in circumstances since the award was made. More importantly, the parties agreed, and their affidavits established, that the joint custody arrangement was not working and had had an adverse effect on the children. Defendant's statements in her affidavit that "the constant changing of the children has resulted in a circumstance which is not in their best interests" and that "the parties have encountered difficulties from time to time in managing the children's time jointly" clearly demonstrate problems with the joint custody arrangement. Although plaintiff did not directly so state, an inference that the parties were no longer effectively communicating or cooperating in matters concerning the children and that the custody arrangement was detrimental to the children may fairly be drawn from the facts asserted in plaintiff's affidavit. Thus, although each party ascribed a different cause to the breakdown of the joint custody arrangement, both parties ultimately agreed with the essential fact that the joint custody award was not functioning.

In *Becker v. Becker*,[5] this Court held that, to justify reopening the custody question, the change in circumstances must have a "material relationship to and substantial effect on ... the functioning of the presently existing custodial relationship." [6] Thus, the nonfunctioning of a joint custody arrangement is clearly a substantial change in circumstances which justifies reopening the custody issue.

■ Defendant also contends that, in receiving the custody evaluation reports and relying on them in making its threshold finding of a substantial change in circumstances, the trial court considered evidence relevant to the custody issue contrary to *Hogge*. Implied in defendant's argument is the premise that the custody evaluation reports were not relevant to the issue of whether there had been a substantial change in circumstances. However, that was not the case. A substantial portion of both reports strongly corroborated the parties' assertions that the joint custody arrangement was not working and was detrimental to the children. Thus, the reports were relevant to a determination of whether there had been a change in circumstances and the significance of the change and the trial court did not err in considering them in the initial phase of the *Hogge* proceeding.

■ Finally, defendant contends that there was insufficient evidence to support the trial court's determination that awarding custody to the father was in the best interests of the children. It is apparent from the court's statement to the parties in rendering its decision, that the court relied heavily on the testimony of Drs. Stewart and Peterson, both of whom recommended that custody be granted to the father.[7] Given this expert testimony, the court's

3. *Id.*

4. *Id.*

5. Utah, 694 P.2d 608 (1984).

6. *Id.* at 610.

7. Defendant contends that the report and testimony of Dr. Peterson was tainted by his knowledge of Dr. Liebroder's report. However, no objection to Dr. Peterson's report or testimony on this ground was made at trial, and defendant's attorney cross-examined Dr. Peterson regarding his knowledge of Dr. Liebroder's report in an apparent attempt to impeach Dr. Peterson's testimony. By failing to object, defendant failed to preserve the issue on appeal. *See* Utah R.Evid. 103(a).

ruling was based on ample evidence and was within the broad discretion granted the trial court in divorce proceedings.[8]

Affirmed.

HOWE, J., concurs.

ZIMMERMAN, Justice (concurring in the result):

Today the Court affirms the trial court's finding that the change-of-circumstances requirement of *Hogge v. Hogge*, Utah, 649 P.2d 51 (1982), was satisfied. I agree that this requirement was met; however, I differ with the majority as to the proper basis for affirming this finding.

This Court set a very high standard for reopening custodial orders in *Hogge* and *Becker v. Becker*, Utah, 694 P.2d 608 (1984). The majority analyzes this case as though it involves the usual custody dispute, where custody has been awarded to one parent and the other is attempting to reopen the order and change custody, and finds that the evidence presented through affidavits and testimony is sufficient to show a change of circumstances under *Hogge* and *Becker*. I disagree. The evidence presented below would not warrant a reopening of a custody order if this were the usual custody case. There is no proof of a change in circumstances sufficiently substantial in its effect on the mother's parenting ability or on her relationship with the children as to require the conclusion that the benefit to the children from a change of custody will outweigh the certain harm that will follow from such a destabilization of their lives. *Shioji v. Shioji*, 712 P.2d 197, 1985 (Zimmerman, J., dissenting).

I do find that *Hogge* and *Becker* are satisfied under the unique facts of this case, however. The fact that the order under consideration is not one awarding custody to one of the parents, but one providing for joint custody, is of central importance in determining what should be required to justify reopening it. An order awarding custody to one parent fixes that parent as the primary nurturer of the child and the one with whom the child will reside. As I suggested in *Shioji, Hogge* and *Becker* require that once such an order is entered, considerations of stability in child placement become of central importance: there should be a very strong bias against reopening the order because children are almost always harmed by a transfer from one parent to the other.

When the reopening of a joint custody order is at issue, however, the stability-of-placement consideration that is central to the strict reopening standards of *Hogge* and *Becker* appears to be of minimal importance simply because the order at issue has not fixed one parent as the primary nurturer. To the contrary, a measure of instability is inherent in a joint custody order because it requires that two people, who are not residing together, share custodial rights and responsibilities and work out the logistics of caring for the children.[1]

Another characteristic of joint custody orders also suggests that they should be more readily opened. A joint custody order is premised on the parents' ability to work out the details of custody between themselves. If the parents are unable to make this cooperative arrangement work, that alone shows a change of circumstances warranting a reexamination of the original order. In the present case, both parties asserted that joint custody was not working. That would end the inquiry for me. The order must be reopened and custody must be given to one parent or the other. As to the propriety of the award of custody to the father, there was ample evidence to

8. *Jorgensen v. Jorgensen*, Utah, 599 P.2d 510, 511 (1979).

1. Once the court reopens the order and reaches the question of which of the two parents should be given custody, how the children were cared for under the joint custody arrangement certainly would be a relevant consideration. For example, if the facts show a degree of stability in the children's actual living arrangements approaching that normally incident to one-parent custody, then the trial court should accord those arrangements a great deal of weight in making its custody decision.

support the trial court's order. For that reason, I concur in the result reached by the majority.

DANIELS, District Judge (Concurring):

As a district judge, I am honored to be invited to participate with the Supreme Court on this case. I hope the members of this Court will not consider it an abuse of that invitation for me to write this concurring opinion, which is necessarily critical of some of the Court's previous opinions. I believe that the problems with this case did not arise in the trial court; rather, they arose when this Court issued its opinion in the case of *Hogge v. Hogge*, Utah, 649 P.2d 51 (1982), and have worsened as that case has been followed and expanded. The procedure mandated by these cases sounds fine in an appellate opinion; unfortunately, it does not work well on the trial level.

The *Hogge* case requires that the hearing in a custody modification case be bifurcated so that the evidence of changed circumstances is heard first. Only if the petitioner establishes a substantial change in circumstances will the court proceed with the seond phase of the case, where the entire issue of the best interests of the child is considered.

The problem with the procedure is this: the evidence supporting changed circumstances is almost always the same evidence that is used to establish the best interests of the child. Even when there is additional evidence which bears solely on the best interests question, that evidence is usually so entwined with the changed circumstances evidence that it is almost impossible to sort out. The trial judge is faced with an objection to almost every question. He or she must then try to figure out whether the answer would relate to changed circumstances, best interests, or both. The witness frequently must be recalled to give further testimony in the second phase of the hearing, which causes inconvenience for the witness and expense for the parties.

Admittedly, some trial judges do not follow this cumbersome procedure. Instead, we take all of the evidence and sort out mentally that which relates to changed circumstances and that which relates to best interests. We then make findings on both issues, taking into consideration the important policy of custodial stability, which requires a very high standard to establish a material change in circumstances.

From a review of the record, it is obvious what happened in the trial court in this case. The judge reviewed the custody evaluations and the pleadings. From these he determined the following: (1) both parties had petitioned the court for a change in the joint custody arrangement although for different reasons; (2) Mr. Moody had remarried; (3) Mrs. Moody was planning to remarry, although her future husband was still in the process of divorce; (4) the joint custody situation was not working out well and the children were "showing the signs of too frequent change from one household to another." This was sufficient for the trial judge to proceed with a hearing on all of the evidence. At the conclusion of the evidence, the judge entered findings and conclusions on both issues: changed circumstances and best interests. In my view, this was not only permissible, it was the only sensible procedure.

DURHAM, Justice (Dissenting):

I would reverse the ruling of the trial court. The original divorce decree in this case was entered on the basis of a stipulation prepared by respondent and signed by both parties. It provided for joint custody of the parties' two minor children, with appellant having primary custody for nine months of the year and respondent having primary custody for three months during the summer, with both periods including reasonable visitation for the noncustodial spouse.

In support of his motion for an order to show cause respecting modification of custody, respondent alleged the following changes in circumstances: that appellant intended to leave the state of Utah (this allegation was withdrawn prior to the trial); that appellant had become physically and emotionally unable to care for the chil-

dren; that the emotional health of the children had deteriorated and they were depressed; that the children wanted to live with respondent and his new wife; and that appellant had had two affairs since the divorce whereas respondent had remarried and could provide a stable home.

In appellant's affidavit in support of her motion for modification of support, custody, and visitation, she alleged changes in her income, a change in respondent's working shifts which affected the time he was available to be with the children, and the assertion that "the constant changing of the children has resulted in a circumstance which is not in their best interests."

At the outset of the trial, appellant's counsel made a motion to bifurcate the proceedings to permit an initial hearing on the existence of a substantial change requiring re-evaluation of custody pursuant to *Hogge v. Hogge,* Utah, 649 P.2d 51 (1982). The trial judge denied that motion, ruling instead that there had been a prima facie showing of substantial change through the submission of custody evaluations conducted by a psychologist and a social worker and through the allegations regarding changed circumstances in appellant's own affidavit. I believe that ruling was erroneous. A review of the evaluations in question and appellant's affidavit shows that none of them contain any facts or admissions supporting the alleged changes in circumstance which were relied on by respondent in his petition for a change of custody.[1]

The trial court in this case misconstrued the purpose and intent of our holding in *Hogge.* We have recently had an opportunity to clarify and amplify the significance of that ruling in *Becker v. Becker,* Utah, 694 P.2d 608 (1984). In *Becker,* 694 P.2d at 610, we referred to the threshold requirement from *Hogge* that the party seeking

modification demonstrate that there have been "changes [since the time of the previous decree] in the circumstances upon which the previous award was based" and that the changes are "sufficiently substantial and material to justify reopening the question of custody." *Hogge,* 649 P.2d at 54. We then emphasized that:

[t]he asserted change must, therefore, have some material relationship to and substantial effect on parenting ability or the functioning of the presently existing custodial relationship....

... The materiality requirement is designed to help the court decide if there is a valid reason to reopen a question already settled by an earlier order.... In other words, if the circumstances that have changed do not appear on their face to be the kind of circumstances on which an earlier custody decision was based, there is no valid reason to reconsider that decision. The rationale is that custody placements, once made, should be as stable as possible unless the factual basis for them has completely changed.

*Becker,* 694 P.2d at 610.

Stability and continuity in placement have pre-eminent importance in child custody cases. The evidence relied on by the trial judge in this case addressed the relative skills and judgment exercised by each of the parties in their parenting activities and the relative desirability of the home environments they are able to provide. It did not show that the *existing custodial arrangement* had undergone changes since the divorce of a kind which would justify reopening the custody question. It is true that respondent alleged that such changes had occurred in his motion and affidavit, but he was never required by the trial judge to prove their existence and magnitude. Absent such proof, and a finding based thereon, it was error for the court to

---

1. Respondent relies on the claim that appellant's affidavit states that "there has [sic] been several substantial changes in circumstance." Her language was to that effect, but the most cursory reading of her affidavit shows that it contained no admissions or concessions whatsoever regarding the changes alleged by respondent. Ap-

pellant's assertions for changes in primary custody went to the disruptive effect on the children of the current arrangements, whereas respondent was alleging a deterioration of the children's mental health and a breakdown in appellant's ability to care for them.

consider and order a modification of custody.

I believe that the majority opinion fails to further this Court's commitment to stability and security in the custodial placement of Utah children subjected by their parents' actions to the supervision of the divorce courts.[2]  It was the clear intent of our ruling in the *Hogge* case to discourage unwarranted or lightly undertaken efforts to change custodial placements.  It is appropriate and necessary that any person seeking to disrupt an established pattern of caretaking and parent-child relationships be required to satisfy stringent requirements and meet a heavy burden of proof.  The trial court's denial of the motion for a hearing on the question of changed circumstances in this case improperly exempted respondent from that obligation.

STEWART, Justice, having disqualified himself, does not participate herein.

SCOTT DANIELS, District Judge, sat.

ZIMMERMAN and DURHAM, JJ., dissent from the denial of the petition for rehearing.

---

[2]  I endorse the discussion of stability of placement contained in Justice Zimmerman's concurring opinion, but suggest that his opinion, like the main opinion, reaches an incorrect result.  Although he notes that "if the facts show a degree of stability in the children's actual living arrangements approaching that normally incident to one-parent custody, then the trial court should accord those arrangements a great deal of weight," the original custody order in this case gave custody to appellant for nine months of each year and to respondent for three months.  That arrangement is very similar to normal one-parent custody awards which follow the typical school year, and there was no justification in this record for disrupting it.