**Denise A. HIRSCH, Plaintiff and Appellant,**

v.

**Frank L. HIRSCH, Defendant and Respondent.**

**No. 20966.**

Supreme Court of Utah.

Sept. 5, 1986.

Cathryn Jamison Judd, Salt Lake City, for plaintiff and appellant.

Nolan J. Olsen, Midvale, for defendant and respondent.

HALL, Chief Justice:

The district court modified the decree of divorce of the parties and changed custody of their minor child from appellant (mother) to respondent (father). Appellant challenges the sufficiency of the evidence to support the change of custody.

The parties separated in the spring of 1983 and were divorced in May 1984. Appellant has changed her place of residence seven times since the divorce, one being outside the state. She is married again, and her husband has experienced seasonal unemployment and difficulty in providing for his four children from a previous marriage. During the Christmas season, it has been necessary for appellant to accept employment outside the home.

Respondent remains unmarried, but has the full support of his family in caring for the needs of the child. He has a stable work history over the past five or six years and appears to be well settled.

The evidence is in dispute as to which parent the child resided with during the separation of the parties and after the divorce. Appellant's evidence was that the child resided with her a majority of the time both before and after the divorce. In contrast, it was respondent's evidence that during the period of separation the child remained with him, and following the divorce the child continued to reside with him, although the decree of divorce placed custody in appellant.

The court appointed an expert to conduct a custodial evaluation. He testified that inasmuch as the child had resided with his father eighty to ninety percent of the time,

he was of the opinion that the child should be placed in the custody of respondent.

Appellant retained her own expert, who testified that she was in basic agreement with the evaluation made by the court-appointed expert. However, she testified that because the mother is the most significant figure for the child through age six she would recommend placement remain with appellant.

In his memorandum decision, the trial judge found both parents to be capable of caring for the child. The court concluded that appellant's frequent changes of residence and her placement of the child with his father a majority of the time constituted a change of circumstances and that it was in the best interests of the child that he live with his father, subject to reasonable and liberal visitation rights.

U.C.A., 1953, §§ 30-3-5(3) and 30-3-10 (Repl.Vol. 3C, 1984 ed. & Supp.1986) confer continuing jurisdiction on the trial court over the subject matter of child custody and support, and sanction changes in custody provisions as determined to be reasonable and necessary for the welfare and best interests of the child. The trial court is afforded particularly broad discretion in the area of child custody. A determination of the "best interests of the child" turns on factors which the trial court is best able to assess, and only when the action taken by the trial court is so unjust as to constitute an abuse of discretion should this Court substitute its own judgment.[1]

In this case, the trial court appropriately applied the standard for reviewing a change of custody as pronounced by this Court in *Hogge v. Hogge*.[2] Application of the *Hogge* standard requires that the trial court first determine whether there has been a substantial and material change in circumstances which justifies reopening the question of custody.[3] Only following an affirmative determination of that issue may the court then proceed to decide whether the requested change in custody will best serve the welfare and interests of the child.[4]

There is an ample evidentiary basis to support the factual determinations made by the trial court in this case. The fact that appellant did not assume the role of the custodial parent following the divorce constitutes a material change of circumstances which warrants the reopening of the question of custody. Particularly is this so in light of the fact that respondent did assume the role of custodial parent and has provided the child with a permanent residence and a stable home life. The child is now of school age and enrolled in school, has gained friends, and has the full support of respondent's family. By placing the child in the custody of respondent, the trial court enhanced the unique bond which exists between respondent, his family, and the child. In so doing, the court served the best interests of the child.

Appellant relies upon *Chase v. Chase*[5] for the proposition that she cannot be deprived of custody in the absence of a finding that she is "immoral, incompetent, or otherwise unqualified." However, *Chase* does not foreclose a determination of the best interests of the child. In fact, the Court in that case duly considered the best interests of the child in reaching its conclusion that the mother's leaving the child with his grandmother or a nursing home while she worked was not inimical to his welfare and that there was no substantial or compelling reason to deprive her of custody.[6] The facts in *Chase* are simply inapposite to the facts of this case. Furthermore, *Chase* was decided under U.C.A., 1953, § 30-3-10 (Repl.Vol. 3, 1969 ed.), which was amended in 1969 to delete the provision which permitted an award of custody to the father upon a finding that the

---

1. Jorgensen v. Jorgensen, 599 P.2d 510, 511–12 (Utah 1979).

2. 649 P.2d 51 (Utah 1982).

3. *Id.* at 54.

4. *Id.*

5. 15 Utah 2d 81, 387 P.2d 556 (1963).

6. *Id.* at 82, 387 P.2d at 556.

mother was immoral, incompetent, or an otherwise improper person.[7] As rewritten, the section required that courts consider the best interests of the child, the past conduct and demonstrated moral standards of each of the parties, and the presumption that the mother was best suited to care for young children.[8] The section was further amended in 1977 to delete any natural presumption in favor of the mother.[9]

The judgment of the trial court is affirmed. No costs awarded.

STEWART and HOWE, JJ., concur.

ZIMMERMAN, Justice (concurring separately):

I join the majority in affirming the trial court. However, I cannot join the majority's expression of the law governing changes of custody. In recent years, beginning with *Hogge v. Hogge,* 649 P.2d 51 (Utah 1982), we have struggled to articulate standards that must be met before changes of custody can be ordered. The resulting case law makes it clear that custody changes are the exception and that they are governed by strict standards that are different from those by which initial custody awards are made.[1] The majority opinion acknowledges this line of authority. But it does not analyze the change of custody issue, and it confuses the matter with its reference to the proposition that a trial court has broad discretion "in the area of child custody" and that it will be reversed "only when the action taken ... is so unjust as to constitute an abuse of discretion

...," a proposition it supports with a citation to the language of sections 30–3–5(1) and 30–3–10 of the Code and *Jorgensen v. Jorgensen,* 599 P.2d 510 (Utah 1979). This casual and, I think, erroneous treatment of the proper legal standards can only create problems. *See Moody v. Moody,* 715 P.2d 507, 510 (Utah 1986) (Zimmerman, J., concurring in the result).

The proper standard for reviewing a change of custody is set out in the *Hogge* line of cases, not in *Jorgensen.*[2] *Hogge* and its progeny do not vest in trial courts any broad discretion when the reopening of a child custody award is at issue. Rather, they require that the trial court first carefully determine whether a change of circumstances has occurred since the initial award that justifies reexamining the placement. Unless this threshold question is answered in the affirmative, the trial court never reaches the question of which of the two contending parties would be the better custodial parent. Our cases "set a very high standard for reopening custodial orders...." *Moody v. Moody,* 715 P.2d at 510 (Zimmerman, J., concurring); *see also Becker v. Becker,* 694 P.2d 608, 610 (Utah 1984); *Hogge v. Hogge,* 649 P.2d at 54. In my view, the majority passes too lightly over the central issue of this appeal— whether the trial court properly found a change of circumstances. In so doing, it may unintentionally give comfort to those who would have trial courts meddle in custody awards upon the slightest pretext, generally to the detriment of the children involved. *See Shioji v. Shioji,* 712 P.2d

---

7. Family Court Act, ch. 72, § 7, 1969 Utah Laws 327, 330.

8. U.C.A., 1953, § 30–3–10 (Repl.Vol. 3, 1969 ed., Supp.1969).

9. Equalization of Domestic Relations Laws, ch. 122, § 5, 1977 Utah Laws 562, 564. *See also* U.C.A., 1953, § 30–3–10 (Repl.Vol. 3C, 1984 ed.).

1. *See Hogge v. Hogge,* 649 P.2d 51 (Utah 1982); *Tuckey v. Tuckey,* 649 P.2d 88 (Utah 1982); *Martinez v. Martinez,* 652 P.2d 934 (Utah 1982); *Williams v. Williams,* 655 P.2d 652 (Utah 1982); *Mitchell v. Mitchell,* 668 P.2d 561 (Utah 1983); *Becker v. Becker,* 694 P.2d 608 (Utah 1984);

*Mineer v. Mineer,* 706 P.2d 1060 (Utah 1985); *Pennington v. Pennington,* 711 P.2d 254 (Utah 1985); *Shioji v. Shioji,* 712 P.2d 197 (Utah 1985); *Moody v. Moody,* 715 P.2d 507 (Utah 1985); *Fontenot v. Fontenot,* 714 P.2d 1131 (Utah 1986).

2. *See* cases cited *supra* note 1. In fact, *Jorgensen* is inapposite since it involves a challenge to an initial custody award, not a change of custody order. It may be that the majority, in citing sections 30–3–5(1) and 30–3–10 and *Jorgensen,* intends only to refer to the standard we apply to review orders changing custody after a change of circumstances has been found. (*See infra* p. 1321.) If so, its statement of that standard is confusing, but not incorrect.

197, 202 (Utah 1985) (Zimmerman, J., dissenting).

The change of circumstances question here is a close one. Most of the facts recited in the majority opinion could not support a finding of a change of circumstances. They reflect little more than the not uncommon physical mobility and economic misfortune that befall many in our society. In my view, only the fact of the mother leaving the child with the father for most of the time after the initial custodial award is pertinent to the standard set out in *Becker:* "The asserted change must ... have some material relationship to and substantial effect on parenting ability [of the custodial parent] or the functioning of the presently existing custodial relationship." 694 P.2d at 610; *accord Shioji v. Shioji,* 712 P.2d at 200. The mother's failure to take active custody of the child after custody was awarded to her does have a "material relationship to and substantial effect on ... the functioning of the ... custodial relationship" set up by the initial custody order.

The trial court's initial custody order necessarily anticipated that the mother would assume physical custody of the child and that she would act to solidify the bond that should exist between the custodial parent and the child and to provide the stability in caregiving that is one of the principal purposes of a one-party custodial arrangement. *See Moody v. Moody,* 715 P.2d at 510 (Zimmerman, J., concurring); *Fontenot v. Fontenot,* 714 P.2d at 1133; *Shioji v. Shioji,* 712 P.2d at 202 (Zimmerman, J., dissenting). Instead, the trial court found that she left the child with the father almost all the time. This probably had the effect of creating stability in the child's life and of bonding the child with the primary caregiver, but not the one contemplated by the court's order. I conclude that the mother's actions have resulted in a change of circumstances not contemplated by the court at the time of the initial award and that this change meets the requirements set forth in *Becker.*

Once the trial court properly found a change of circumstances, it was entitled to weigh all the evidence in determining the placement that would be in the best interests of the child. U.C.A., 1953, § 30–3–10 (Repl.Vol. 3C, 1984); *Williams v. Williams,* 655 P.2d 652, 653 (Utah 1982); *Hogge v. Hogge,* 649 P.2d at 54. A factor that should be given heavy weight in such an analysis is the child's interest in maintaining a stable placement. *Moody v. Moody,* 715 P.2d at 510 (Zimmerman, J., concurring); *Shioji v. Shioji,* 712 P.2d at 202 (Zimmerman, J., dissenting). The court's order had the effect of leaving the child in his existing placement. Absent a strong showing that this was not the best arrangement for the child, I am not persuaded that the trial court abused its discretion.

DURHAM, J., concurs in the concurring opinion of ZIMMERMAN, J.